UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas J. Newman and Kelly M. Newman, | ) ) ) | COMPLAINT |
| Plaintiffs, | ) ) | _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| Chase Bank USA, N.A., GC Services Limited Partnership, and Integrity Financial Partners, Inc. | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiffs for actual and statutory damages, attorneys' fees, and costs for Defendants', GC Service's and Integrity Financial Partners' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA") and violations of the Telephone Consumer Protection Act (hereinafter "TCPA"). The Plaintiffs also seek actual and statutory damages, attorney's fees, and costs for Defendant Chase Bank's violations of the South Carolina Consumer Protection Code, §37-5-108, *et seq*. The Plaintiffs seek compensatory and punitive damages from all of the Defendants' for their violations of South Carolina common law set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367.

3. Venue is proper in the Florence Division because the Plaintiffs reside in Florence County and the Defendants transacted business in this division.

## PARTIES

4. The Plaintiffs, Thomas Newman and Kelly Newman, are residents and citizens of the State of South Carolina, Florence County, and are over the age of twenty-one (21) years.

5. Defendant Chase Bank USA, N.A. (hereinafter referred to as "Chase") is a corporation registered to do business in Delaware with the Delaware Secretary of State. Defendant Chase may be served with process through its Chairman and CEO, James Dimon, as well as through its registered agent The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. Defendant Chase was in all respects and at all times relevant herein, doing business in the state of South Carolina and in this Division.

6. Defendant GC Services Limited Partnership (hereinafter "GC Services") is a Delaware corporation registered in South Carolina. Defendant GC Services can be served through its Registered Agent, CT Corporation System, 2 Office Park Court, Columbia, South Carolina, 29223. Defendant GC Services was in all respects and at all times relevant herein, doing business in the state of South Carolina and in this Division. Defendant GC Services is engaged in the business of collecting consumer debts from consumers residing in South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

7. Defendant Integrity Financial Partners, Inc. (hereinafter "IFP") is a Kansas corporation registered in South Carolina. Defendant IFP can be served through its Registered Agent, Corporation Service Company, 1703 Laurel Street, Columbia, South Carolina 29201. Defendant IFP was in all respects and at all times relevant herein, doing business in the state of South Carolina and in this Division. Defendant IFP is engaged in the business of collecting consumer debts from consumers residing in South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

8. Defendants Chase and GC Services each participated in, and contributed to, the acts that injured and damaged the Plaintiffs as set forth herein below. Each of said parties acted as principal and agent, each of the other, and combined and concurred each with the other in committing the acts that injured the Plaintiffs herein.

9. Defendants Chase and IFP each participated in, and contributed to, the acts that injured and damaged the Plaintiffs as set forth herein below. Each of said parties acted as principal and agent, each of the other, and combined and concurred each with the other in committing the acts that injured the Plaintiffs herein.

## FACTUAL ALLEGATIONS

10. Beginning in or around December 2009, and continuing through March 2010, Defendant Chase, its agents and employees, repeatedly called the Plaintiffs' cell phones in an attempt to collect a consumer debt allegedly owed by Kelly Newman.

11. Defendant Chase was calling the Plaintiffs from three separate phone numbers, but all of the calls set forth herein were from the Defendants.

12. From December 12, 2009 through March 2010, Defendant Chase called the Plaintiffs' cell phones more than 532 times. Said calls were made with the intent to harass, annoy, and intimidate the Plaintiffs.

13. Defendant Chase telephoned the Plaintiffs a minimum of nine times per day on December 17, 18, 21, 22, and 28, 2009, and three times on Christmas Eve.

14. Defendant Chase telephoned the Plaintiffs a minimum of six times per day on December 20, 23, January 14, 20, 21, 26, 27, 28, February 1, 3, 4, 5, 8, 17, 19, 22, 24, 25, 26, March 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, and 21.

15. On January 12, 2010, the Plaintiffs filed a complaint against Defendant Chase with the South Carolina Department of Consumer Affairs. After the Plaintiffs filed the complaint with the Department of Consumer Affairs, Defendant Chase continued repeatedly calling the Plaintiffs.

16. In April, 2010, Defendant Chase assigned, transferred, and/or sold the alleged Chase accounts to IFP and GC Services for collection.

17. In April 2010, the Plaintiff began receiving collection calls from GC Services and IFP.

18. On or about April 8, 2010, Defendant GC Services called the Plaintiffs on their cell phones. When the Plaintiffs didn't answer, GC Services immediately called Kelly Newman's mother and demanded that she provide an additional number for Kelly. When Kelly's mom refused to provide any information, GC Services immediately

called Kelly back on her cell phone. GC Services had no reason to contact Kelly's mother as the Defendant had valid contact information for the Plaintiff.

19. On or about April 12, 2010, Thomas Newman returned a call to GC Services and spoke with a Debbie Sparks, who earlier in the week had told Kelly Newman she was the manager at GC Services. During this call, Thomas asked Debbie why GC Services was calling him about his wife's account because he was only an authorized user on the account. Debbie responded that, as Kelly's husband, he should feel obligated to pay the account. Thomas then told Debbie to stop calling his cell phone number and to only contact Kelly through the mail. Debbie responded very threateningly that if she didn't hear from one of the Newmans by Friday, she would report the account to her manager as a refusal to cooperate.

20. On or about April 13, 2010, GC Services called the Plaintiffs three times. One at 12:03 p.m., then at 1:18 p.m. And then again at 3:26 p.m. The Plaintiff, Thomas Newman, answered the call at 3:26 p.m. and spoke with Debbie Sparks. Thomas told Sparks that Kelly was not home at the time and again asked her not to call his cell phone number any more because he used that number for work.

21. Despite being repeatedly told to stop calling the Plaintiffs on their cell phones, GC Services continued to call the Plaintiffs. Specifically, GC Services called three times on April 9, six times on April 12, three times on April 13, and one time on April 19, 25, and 26, 2010.

22. On or about April 12, 2010, the Plaintiff, Kelly Newman, received a telephone call

from a representative for Defendant IFP who told her that her Chase account balance was $5,879.86 including past due fees and interest. The representative told her she should show some effort to reach a resolution with them or Chase would be seeking legal action. Kelly explained to him that she had lost her job and they were hit very hard with the decline in the economy. She also told him the account was not in her husband's name and her husband did not use it. The representative told her it did not matter whose name was on it since neither of them could pay it and then stated the account was being reported on both of their credit reports.

23. That same day, Thomas Newman spoke with Phyllis Robinson with IFP. Thomas specifically asked the collector not to call his cell phone since he used it as his business number and the debt was not his. Robinson said it did not matter since Thomas was self-employed and the cell phone number was not a place of business. Robinson also told Thomas that his name was on the debt and that "he just needed to pay his bills. If he'd just pay his bills they'd stop calling." Robinson went on to say "it's only $5800, just pay it." Thomas reiterated that he was telling IFP to stop calling his cell phone to which Robinson replied "we don't have to stop calling because this is a debt you owe. This is your personal cell phone number and there is no FCC violation in calling it since we're just trying to collect a debt."

24. On or about April 23, 2010, IFP called and spoke with the Plaintiff, Kelly Newman. During this call, Janet, a collector with IFP, told Kelly that IFP was going after both Kelly and Thomas for the account because Thomas was a co-signor. Janet also stated

that she had pulled up both of the Plaintiffs' credit reports and that she was looking at their accounts with Citi and other creditors. Janet stated that Chase would accept a reduced amount to settle the account but the Plaintiffs needed to exhaust the resources of their family to get this account paid now.

25. IFP continued to call the Plaintiffs into May, 2010.

26. Defendants GC Services and IFP repeatedly called the Plaintiffs on numbers that were assigned to a cellular telephone service for which Plaintiffs incur a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

27. The Plaintiffs expressly revoked any and all permission for Defendants GC Services and IFP to contact them on their cellular telephones.

28. None of Defendant GC Services' telephone calls placed to Plaintiffs were for emergency purpose as defined by 47 U.S.C. §227 (b)(1)(A)(I).

29. None of Defendant IFP's telephone calls placed to Plaintiffs were for emergency purpose as defined by 47 U.S.C. §227 (b)(1)(A)(I).

30. The telephone calls made by Defendants GC Services and IFP were in violation of 47 U.S.C. §227(b)(1).

## COUNT ONE
### (Unconscionable Conduct - §37-5-108)

31. The Plaintiffs adopt the averments and allegations of paragraphs 10 through 30 hereinbefore as if fully set forth herein.

32. Defendant Chase has engaged in unconscionable collection activities and practices in violation of the South Carolina Consumer Protection Code with respect to the Kelly

Newman's alleged consumer debt.

33. Defendant Chase repeatedly violated §37-5-108(5)(b) by calling the Plaintiffs multiple times per day with the purpose of harassing the Plaintiffs.

34. Defendant Chase violated §37-5-108(5)(b)(vii) by causing the Plaintiffs' cell phones to ring repeatedly during a twenty-four hour period with the intent to annoy, abuse, or harass the Plaintiffs.

35. Upon information and belief, the above violations of the South Carolina Consumer Protection Code by Defendant Chase entitle Plaintiffs to not less than one hundred ($100.00) dollars and not more than one thousand ($1,000.00) dollars for each violation, as well as attorney fees and costs.

36. The Plaintiffs claim the above statutory damages, plus actual damages, attorneys' fees and costs.

## COUNT TWO
### (Unfair Trade Practices - S.C. Code Ann. §39-5-10, *et. seq.*)

37. The Plaintiffs hereby adopt all of the allegations set forth in paragraphs 10 through 36 as if set forth fully herein.

38. The activities of Defendant Chase constitute "trade or commerce" as defined by South Carolina Code §39-5-10, *et. seq.* (As amended).

39. The actions of Defendant Chase described above constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, §39-5-10 *et.seq.* and are knowing and willful violations thereof.

40. The Plaintiffs further allege that the actions of Defendant Chase have a real and substantial potential for repetition and are a threat to the public interest and South Carolina consumers.

41. The Plaintiffs have suffered an ascertainable loss due to the unlawful actions of the Defendant in calling the Plaintiffs' cell phones over 532 times and are entitled, under § 39-5-140, to recover actual damages in an amount to be proven at trial, treble of said actual damages for Defendant's knowing and willful behavior, and an award of reasonable attorney's fees and costs.

## COUNT THREE
## FAIR DEBT COLLECTIONS PRACTICES ACT

42. The Plaintiffs adopt the averments and allegations of paragraphs 10 through 41 hereinbefore as if fully set forth herein.

43. Defendants GC Services and IFP have engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiffs' alleged consumer debt.

44. Defendants GC Services and IFP violated §1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiffs by repeatedly telephoning the Plaintiffs with the intent to annoy, abuse, or harass the Plaintiffs in an effort to coerce them into paying a debt in violation of §1692d(5).

45. Defendants GC Services and IFP violated §1692e by making false and misleading representations to the Plaintiffs. At the time the Defendants made these representations to the Plaintiffs, the Defendants knew, or should have known, that said

representations were false. Said representations made by Defendants were made recklessly, willfully, and/or intentionally.

46. Defendant IFP communicated or threatened to communicate to the credit reporting agencies credit information which was known or which should have been known to be false in violation of §1692e(8). Specifically, Defendant IFP told the Plaintiffs that it was reporting the account on both of the Plaintiffs' credit reports.

47. The Defendant IFP engaged in acts and practices in violation of the FDCPA while conducting collection activity with respect to the alleged debts of the Plaintiffs by failing to send the consumer an initial written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector in violation of 15 U.S.C. §1692g(a)(3); and a statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector in violation of 15 U.S.C. §1692g(a)(4).

48. As a proximate result of the Defendants' actions, the Plaintiffs were caused to suffer actual damages, worry, humiliation, fear, frustration, family discord, loss of peace and quiet, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish.

## COUNT FOUR
## NEGLIGENT VIOLATIONS OF THE

**TELEPHONE CONSUMER PROTECTION ACT**

49. The Plaintiffs adopts the averments and allegations of Paragraphs 10 through 48 hereinbefore as if fully set forth herein.

50. The foregoing acts and omissions of Defendants GC Services and IFP constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

51. As a result of Defendants, GC Services and IFP's, negligent violations of 47 U.S.C. § 227 *et seq.,* the Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C.§ 227(b)(3)(B).

## COUNT FIVE
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

52. The Plaintiffs adopts the averments and allegations of Paragraphs 10 through 51 hereinbefore as if fully set forth herein.

53. The foregoing acts and omissions of Defendants GC Services and IFP constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

54. As a result of Defendants', GC Services and IFP's, knowing and/or willful violations of 47 U.S.C. §227 *et seq.*, the Plaintiffs are entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. § 227(b)(3)©.

## COUNT SIX
## NEGLIGENT TRAINING AND SUPERVISION

55. The Plaintiffs adopt the averments and allegations of paragraphs 10 through 54 hereinbefore as if fully set forth herein.

56. Defendants, Chase, GC Services and IFP, knew or should have known of its inadequate training and supervision. If Defendants had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiffs would not have occurred.

57. Defendants, Chase, GC Services and IFP, negligently failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

58. As a result of the Defendants' negligence, the Plaintiffs suffered humiliation, family discord, stress, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT SEVEN
## RECKLESS AND WANTON TRAINING AND SUPERVISION

59. The Plaintiffs adopt the averments and allegations of paragraphs 10 through 58 hereinbefore as if fully set forth herein.

60. Defendants, Chase, GC Services and IFP, knew or should have known of its inadequate training and supervision. If Defendants had properly trained and supervised its employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon the Plaintiffs would not have occurred.

61. Defendant, Chase Finance, Inc., knew or should have known that the conduct of its

employees, agents, and/or assigns was improper.

62.   Defendants recklessly and wantonly failed to train and supervise its employees, agents, and/or assigns in order to prevent said improper conduct.

63.   As a result of the Defendants' recklessness and wantonness, the Plaintiffs suffered humiliation, family discord, stress, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs demand a judgment against the Defendants for the following:

a.   For damages against Chase in amounts or other appropriate relief as may be determined by the Court pursuant to SC§ 37-5-108 to include the Plaintiffs' actual damages, statutory damages of one thousand ($1,000.00) dollars for each violation, as well as attorney's fees and costs.

b.   For relief in amounts or other appropriate relief as may be determined for the Plaintiffs' actual damages, for the Plaintiffs' actual damages to be trebled by the Court as it deems proper, and attorney's fees against Defendant Chase for its violations of Sections 39-5-10, et seq. of the South Carolina Code of Laws Annotated;

c.   Statutory damages of $1,000 for each Plaintiff from each Defendant, GC Services and IFP, for their violations of the FDCPA (15 U.S.C. §1692k);

d.   Actual damages for GC Services' and IFP's violations of the FDCPA;

e. Costs and reasonable attorney's fees from GC Services and IFP pursuant to 15 U.S.C. §1692k;

f. Statutory damages from Defendants GC Services and IFP for their violations of the TCPA;

g. Treble damages from Defendants GC Services and IFP for their knowing and/or willful violations of 47 U.S.C. §227 *et seq.*,;

h. Compensatory and punitive damages against all of the Defendants in an amount to be determined by a struck jury on Plaintiff's state law claims for damages due to the Defendants' Negligent Training and Supervision; and Reckless and Wanton Training and Supervision;

i. For this matter to be heard by a jury; and

j. For such other and further relief as this Court deems necessary and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed ID#10323
Attorney for Plaintiffs

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL**

Chase Bank USA, N.A.
c/o James Dimon, Chairman and CEO
200 White Clay Center Drive
Newark, DE 19711

Chase Bank USA, N.A.
c/o The Corporation Trust Company, Registered Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

GC Services Limited Partnership
c/o C T Corporation System, Registered Agent
2 Office Park Court
Columbia, SC 29223

Integrity Financial Partners, Inc.
c/o Corporation Service Company, Registered Agent
1703 Laurel Street
Columbia, SC 29201